## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

```
==============================
                              :
AUCTUS FUND, LLC, and         :
EMA FINANCIAL, LLC,           :
                              :
        Plaintiffs,           :
                              :
        v.                    :        Civil Action No._____
                              :
OMAGINE, INC., and            :
JOURNEY OF LIGHT, INC.,       :
                              :
        Defendants.           :
                              :
==============================
```

## COMPLAINT AND DEMAND FOR JURY TRIAL

### I. INTRODUCTION

1.     The Plaintiffs, Auctus Fund, LLC, (hereinafter "Auctus"), and EMA Financial, LLC (hereinafter "EMA"), respectfully submit their Complaint and Demand for Jury Trial (hereinafter the "Complaint") against the Defendant, Omagine, Inc. (hereinafter the "Company" or "OMAG"), and for EMA alone, against Defendant Journey of Light, Inc. (hereinafter "Journey"), in the above-captioned action. The Plaintiffs' allegations, as set out herein, are asserted for their respective damages arising from, and resulting from, the Defendant's violations of the following:

   a)     Section 10(b) of the Securities Exchange Act of 1934, *as amended* (hereinafter the "Exchange Act"), 15 U.S.C. §78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5;

   b)     Massachusetts Uniform Securities Act, M.G.L. c.110A, §§ 101, *et seq.*, *as amended* (hereinafter the "Uniform Securities Act"), solely as to

Auctus;

c)      breaches of contract;

d)      breaches of implied covenant of good faith and fair dealing;

e)      unjust enrichment;

f)      breaches of fiduciary duty;

g)      fraud and deceit;

h)      negligent misrepresentation; and/or

i)      the Massachusetts Consumer Protection Act, M.G.L. c. 93A, §§ 2 and 11, *as amended*, solely as to Auctus.

2.      The Plaintiffs further allege that, as a result and as caused by the Defendants' breaches, actions, omissions, policies, practices, and/or courses of conduct, Auctus and EMA have suffered irreparable harm to their respective businesses and reputations in the investment industry, damages from the Defendants' coercion, duress, and unfair and deceptive anti-competitive acts, causing lost revenue, lost profits and prospective business, together with its injuries and damages.

3.      The Plaintiffs respectfully request that their causes of action against the Defendants proceed to a trial by jury, that judgment be entered on all Counts against the Defendants and that Auctus and EMA be granted temporary, preliminary and permanent injunctive and equitable relief, and be awarded their respective compensatory damages and losses, costs, interest, plus multiple and/or punitive damages, attorneys' fees, and any such other relief as this Honorable Court deems just and appropriate.

## II. **PARTIES**

4.      The Plaintiff, Auctus Fund, LLC, is a limited liability company, duly organized in

the State of Delaware, and with its principal place of business located at 545 Boylston Street, 2nd Floor, Boston, Massachusetts 02116.

5.     The Plaintiff, EMA Financial, LLC, is a limited liability company, duly organized in the State of Delaware, and with its principal place of business located at 40 Wall Street, 17th Floor, New York, New York 10005.

6.     Upon information and belief, the Defendant, Omagine, Inc., is a corporation, duly organized in the State of Delaware, and with a principal place of business located at 136 Madison Avenue, 5th Floor, New York, New York 10016.

7.     Upon information and belief, the Defendant, Journey of Light, Inc., is a corporation, duly organized in the State of Delaware, and with a principal place of business located at 136 Madison Avenue, 5th Floor, New York, New York 10016. Upon information and belief, Defendant Journey is a subsidiary of Defendant Omagine, Inc., and is a joint-tortfeasor as to both Plaintiffs and is the Guarantor of OMAG's obligations under the EMA Securities Purchase Agreement, the Convertible Promissory Note and EMA Transaction Documents.

### III. <u>JURISDICTION AND VENUE</u>

8.     The Plaintiffs assert that this Honorable Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, and under the Securities Act of 1933, *as amended*, 15 U.S.C. §§ 77a, *et seq.* (hereinafter the "Securities Act"), and under the Exchange Act, *as amended*, 15 U.S.C. §§ 78a, *et seq.*

9.     The Plaintiffs further contend that, pursuant to 28 U.S.C. § 1391(b), venue is proper in the District of Massachusetts in that, pursuant to the Transaction Documents (defined below), the Plaintiff Auctus and Defendant OMAG agreed that any and all disputes between and/or among them shall be brought, *inter alia*, in the state or federal courts in the

Commonwealth of Massachusetts. Additionally, this Court is in such District where the Plaintiff Auctus is headquartered and has its principal place of business, and is where the violative conduct described herein is alleged to have occurred.

10.     This Court has personal jurisdiction, generally and specifically, over the Defendants by express terms of the Auctus Transaction Documents, and as arising from its extensive business contacts, generally over time and specifically, in their business dealings with Plaintiff Auctus within the Commonwealth of Massachusetts. The Plaintiffs respectfully assert that the claims and causes of action have the same common nexus of operative facts as to both Auctus and EMA, and that certain of the facts and legal issues are common to their respective claims, and as such, the claims are appropriately joined herein.

## IV. <u>FACTUAL BACKGROUND</u>

### A.     Defendants' Misrepresentations and Omissions of Material Facts and <u>Fraud in Connection with the Offer, Purchase and Sale of Securities</u>

11.     Upon information and belief, Defendant OMAG was incorporated in or about 2004 and is based in New York, New York. The Defendant claims to be headquartered in New York City and has represented that it has a subsidiary based in Muscat, Oman.

12.     Upon information and belief, and according to their website, the Defendants have falsely represented and omitted material facts while having a duty to disclose the same, and as relied upon by the Plaintiffs, to their detriment, that OMAG "*is* an entertainment, hospitality and tourism company with *significant management operations and residential and commercial real estate development activities*." *See* Certain Pages of the OMAG Website, dated February 6, 2019, attached, restated and incorporated by reference herein as **Exhibit A-1** (emphasis added).

13.     Upon information and belief, the Defendants have further falsely represented and

omitted material facts while having a duty to disclose the same, and as relied upon by the Plaintiffs, to their detriment, that OMAG's "projects *always include* traditionally designed residential and commercial components…." *Id.* (emphasis added).

14.     Upon information and belief, the Defendants have further falsely represented and omitted material facts while having a duty to disclose the same, and as relied upon by the Plaintiffs, to their detriment, that "*all* of … [OMAG's] developments are historically faithful to their surroundings." *Id.* (emphasis added).

15.     Upon information and belief, the Defendants have further falsely represented and omitted material facts while having a duty to disclose the same, and as relied upon by the Plaintiffs, to their detriment, that as a first alleged business strategy, OMAG sought to "design and develop . . . unique tourism destinations and have a "high culture" flavor and a "pop culture" texture." *Id.*

16.     Upon information and belief, the Defendants have further falsely represented and omitted material facts while having a duty to disclose the same, and as relied upon by the Plaintiffs, to their detriment, that the Defendants "mobilize … [their] people and resources to design and develop truly unique world-class tourism destinations that *provide superior financial returns*." *Id.* (emphasis added).

17.     Upon information and belief, the Defendants have further falsely represented and omitted material facts while having a duty to disclose the same, and as relied upon by the Plaintiffs, to their detriment, that OMAG "*put[s]* … [its] *shareholders at the center of everything* … [the Defendants] do." *Id.* (emphasis added).

18.     Upon information and belief, the Defendants have further falsely represented and omitted material facts while having a duty to disclose the same, and as relied upon by the

Plaintiffs, to their detriment, that their aim "is to *generate exceptional value for our shareholders*." *Id.* (emphasis added).

19.     Upon information and belief, the Defendants further falsely represented and omitted material facts while having a duty to disclose the same, and as relied upon by the Plaintiffs, to their detriment, that they would be developing:

> "a high culture theme park . . . associated exhibition buildings, a boardwalk, an open air amphitheater and stage, open space green areas, a canal and an enclosed harbor and marina area, associated retail shops, entertainment venues, boat flips and docking facilities, a five-star resort hotel . . . commercial office buildings . . . and approximately two thousand residences to be developed for sale."

*See* Certain Pages of the OMAG Website, dated February 6, 2019, attached, restated and incorporated by reference herein as **Exhibit A-2**.

20.     Upon information and belief, the Defendants have also falsely represented and omitted material facts while having a duty to disclose the same, and as relied upon by the Plaintiffs, to their detriment, that its internal financial model purportedly,

> "forecasts significant net positive cash flows for Omagine, LLC over the seven year period subsequent to the signing of the Development Agreement and a net present value of the Omagine Project of approximately $1.55 billion dollars."

*Id.*

21.     With respect to their value estimation and business model, by their website, the Defendants have falsely promised, and omitted material facts while having a duty to disclose the same, and as relied upon by the Plaintiffs, to their detriment,

> to "*continually update this model* at regular intervals as new facts and information become available [sic] as the development program and design process unfolds and as market conditions require."

*Id.* (emphasis added).

22.     On or about August 23, 2017, the Defendants fraudulently represented and

omitted material facts while having a duty to disclose the same, and as relied upon by the Plaintiffs, to their detriment, that

> they "*will have* hotels, a boutique mall, an open air amphitheatre, exhibition venues, a harbor and marina area, offices, restaurants, and entertainment venues."

*See* Certain Pages of the *Times of Oman*, attached, restated and incorporated by reference herein as **Exhibit A-3** (emphasis added).

23.     The Company falsely stated that, and omitted material facts while having a duty to disclose the same, and as relied upon by the Plaintiffs, to their detriment, the Defendants falsely stated that they,

> sought to "design and develop . . . unique tourism destinations and have a "high culture" flavor and a "pop culture" texture," and claims that [they] … plan[] to "*generate exceptional value for our shareholders*…."

*Id.* (emphasis added).

## B.     The Auctus / OMAG Transactions Documents and Contracts

24.     On or about October 6, 2017, the Company executed, *inter alia*, a certain Securities Purchase Agreement (hereinafter the "Auctus Purchase Agreement" or the "Auctus SPA") and a certain Convertible Promissory Note (hereinafter the "Auctus Note" and, with the Auctus SPA and other documents, collectively hereinafter the "Auctus Transaction Documents"), thereby entering into a contract with Plaintiff Auctus for its investment in OMAG. *See* Auctus Purchase Agreement, attached, restated and incorporated by reference herein as **Exhibit B-1**; Auctus Note, attached, restated and incorporated by reference herein as **Exhibit B-2**.

25.     Thereafter, the Company incurred and/or caused several Events of Default, as set forth in Article III, entitled "*Events of Default*," of the Auctus Note. These Events of Default included, *inter alia*, breaches of following provisions of the Auctus Transaction Documents: a)

Sections 1.3 (Authorized Shares); b) Section 2.8 (Non-Circumvention); c) Section 3.1 (Failure to pay Principal or Interest); d) Section 3.2 (Failure to Honor Conversion); e) Section 3.4 (Breach of Agreement and Covenants – Sections 2.8 of the note – Non-circumvention and 1.3 see above); f) Section 3.5 (Breach of Representations and Warranties – Section 3(g) (SEC Documents; Financial Statements) of the Auctus SPA); and g) Section3.10 (Failure to Comply with the Exchange Act).

26.     Thereafter, it is undisputed that the Company incurred and/or caused several Events of Default, as set forth in Article III, entitled "*Events of Default*," of the Auctus Note. In addition, pursuant to Section 3.1, an Event of Default shall have occurred by the failure of the Company to pay the principal or interest when due on the Note, whether at maturity, upon acceleration, or otherwise. *See* Note (**<u>Exhibit B-2</u>**), § 3.1. Events of Default, together with others, have occurred and continue to occur.

27.     As a result of such Events of Default and the continuation of the same without cure, on or about August 22, 2018, Plaintiff Auctus delivered its Notice of Default on the October 6, 2017 Note (hereinafter the "Auctus Default Notice") to the Company. *See* First Auctus Notice of Default, dated July 9, 2018, attached restated and incorporated by reference herein as **<u>Exhibit B-3.</u>**

28.     Among the Events of Default is the failure of the Defendants to file, on a timely basis or at all, the OMAG periodic filings with the U.S. Securities and Exchange Commission (hereinafter the "SEC" or the "Commission").  Additionally, OMAG has failed to make filings which are required under the SEC statutes, rules and regulations, which, upon information and belief, has had a material impact on the public over-the-counter markets, to the detriment of Auctus.

29.     Solely as an example of the same, in its Notice of Default to Defendant OMAG, Plaintiff Auctus stated as follows:

> "An examination of OMAG's most recent periodic SEC filing, its quarterly report on Form 10-Q for the period ended September 30, 2017 filed with the SEC filed on November 20, 2018 (late) reveals that the OMAG defaults delineated in this letter are *both quantitatively and qualitatively material to the stock market* (especially in light of the capital uncertainty disclosures set forth at pages 43-59 thereof) and should have been disclosed in a Form 8-K under item 2.04 of Form 8-K – "Triggering Events that Accelerate or Increase a Direct Financial Obligation" of an issuer such as OMAG. The *failure of OMAG*, the addressees of this letter and the board to file such an 8-K *may constitute a fraud on the market by each of them jointly and severally under Rule 10b-5 and the cases thereunder.* Each trade on every passing day that OMAG continues to trade under these circumstances *constitutes a continuing fraud on the public perpetrated by the addressee of this letter and the Board of Directors,* especially in light of the fact that you are now all on notice of this state of affairs, and *increases the damages each of you cause to open market purchasers of OMAG common shares every moment of every trading day*."

*Id.* (emphasis added).

30.     Since the delivery of the First Auctus Notice of Default, the Defendants has failed to cure the same, which default continues to the present date.

31.     Upon the occurrence of certain Events of Default, including but not limited to Section 3.1 of the Auctus Note, the entire principal and accrued interest shall be due and owing hereunder. Furthermore, an Event of Default pursuant to Section 3 of such Note, the Company is required to pay, and shall pay, Plaintiff Auctus the "Default Sum" (as defined therein), due under the Auctus Note as multiplied by One Hundred - Fifty and 00/100 (150.00%) percent. Thus, as of April 2, 2019, the Company owes Plaintiff Auctus, under the Auctus SPA and the Auctus Note, the Default Sum totaling Three Hundred – Two Thousand – Seven Hundred – Twenty and 52/100 (**$302,720.52**) Dollars (U.S.).Until paid, the Default Sum shall continue to accrue the default interest rate of Twenty-four and 00/100 (24.00%) percent per year, provided by the Note.

**C.**     **The EMA / OMAG Transaction Documents and Contracts**

32.     On or about September 28, 2017, OMAG and Journey executed, *inter alia*, a certain Securities Purchase Agreement (hereinafter the "EMA Purchase Agreement" or the "EMA SPA") and a certain Convertible Promissory Note in the principal amount of $55,000.00 (hereinafter the "EMA Note" and collectively hereinafter, with the EMA SPA and other documents, as the "EMA Transaction Documents"). By the EMA Transaction Documents, OMAG and Journey entered into contracts with EMA for its investment in the Defendants. *See* EMA Securities Purchase Agreement, attached, restated and incorporated by reference hereto as **Exhibit C-1**; EMA Convertible Promissory Note, attached, restated and incorporated as **Exhibit C-2**.

33.     Thereafter, the Defendants incurred and/or caused several Events of Default, as set forth in Article III, entitled "*Events of Default,*" of the Note. These Events of Default included, *inter alia,* breaches of the following provisions of the Transaction Documents: a) Section 1.3 (Authorized Shares) pursuant to Section 3.2 (Conversion and the Shares); b) Section 1.9 (Note Redemption); c) Section 2.8 (Subsequent Financings); d) Section 3.1 (Failure to Pay Principal or Interest); e) Section 3.2 (Fail to Honor Conversion and the Shares); f) Section 3.3 (Breach of Covenants); g) Section 3.4 (Breach of Representations and Warranties); h) Section 3.9 (Failure to Comply with the Exchange Act); i) Section 3.15 (Replacement of Transfer Agent); j) Section 3.16 (Cross Default), and together with k) a breach of Section 4(m) of the SPA (Right of First Refusal).  *See* Correspondence by EMA Financial, LLC to the Defendants, dated February 7, 2018, as attached, restated and incorporated by reference as **Exhibit C-3.**

34.     It is undisputed that the Defendants incurred and/or caused such multiple Events of Default of the Note and the Securities Purchase Agreement.  In addition, pursuant to Section 3.1,

an Event of Default shall have occurred by the failure of OMAG and/or Journey to pay the principal or interest when due on the Note, whether at maturity, upon acceleration, or otherwise. *See* Note (**Exhibit C-2**) § 3.1, 3.2, 3.9, 3.15 & 3.16. Events of Default, together with others, have occurred and continue to occur.

35.     As a result of these Events of Default and the continuation of the same without cure to the present time, on or about February 7, 2018, Plaintiff EMA delivered its Notice of Default (hereinafter the "EMA Notice of Default") to OMAG. *See* Correspondence by EMA Financial, LLC to Omagine, Inc., dated February 7, 2018 (**Exhibit C-3**). Since the delivery of the EMA Notice of Default, the Defendants have failed to cure various defaults, which continues to the date of this filing.

36.     Upon the occurrence of certain Events of Default, including but not limited to the EMA Note, the entire principal and accrued interest shall be due and owing hereunder. Furthermore, an Event of Default pursuant to Section 3 of such Note, the Company is required to pay, and shall pay, Plaintiff EMA the "Default Sum" (as defined therein), which, as of the date of the Default Notice, is Four-Hundred Forty-One Thousand-One Hundred-Twenty-Four and 35/100 ($441,124.35) (U.S.). Until paid, under the terms of the Note, this Default Sum shall continue to accrue the interest at the default rate of Twenty-Four and 00/100 (24.00%) percent per annum. *See* **Exhibit C-2**, attached, restated and incorporated by reference hereto.

### D.     The Securities Fraud and Violations of Rule 10b-5

37.     It is undisputed that the Defendants failed to timely fulfill OMAG's reporting obligations under the Exchange Act of 1934, as amended, 15 U.S.C. §§ 78a, *et seq*.

38.     The Plaintiffs assert and allege that the Defendants misrepresented and omitted and failed to provide material facts to Auctus and to EMA in connection with their respective

investments and in the offer, purchase and sale of securities, and especially with respect to the operations, business, finances, future prospects and other matters of Defendant OMAG, as set forth herein.

39.     Upon information and belief, OMAG was never "an entertainment, hospitality and tourism company with *significant management operations and residential and commercial real estate development activities*."

40.     Upon information and belief, the Defendants' projects never "include[d] traditionally designed residential and commercial components…."

41.     Upon information and belief, none "of … [OMAG's] developments are historically faithful to their surroundings." *Id.* (emphasis added).

42.     Upon information and belief, the Defendants never had a business strategy in which it sought to "design and develop . . . unique tourism destinations and have a "high culture" flavor and a "pop culture" texture."

43.     Upon information and belief, the Defendants never "mobilize[d] … [its] people and resources to design and develop truly unique world-class tourism destinations that *provide superior financial returns*."

44.     Upon information and belief, the Defendants never "*put* … [their] *shareholders at the center of everything* … [the Company] do[es]."

45.     Upon information and belief, the Company never "*generate[d] exceptional value for our shareholders*."

46.     Upon information and belief, the Defendants never developed "a high culture theme park . . . associated exhibition buildings, a boardwalk, an open air amphitheater and stage, open space green areas, a canal and an enclosed harbor and marina area, associated retail shops,

entertainment venues, boat flips and docking facilities, a five-star resort hotel . . . commercial office buildings . . . and approximately two thousand residences to be developed for sale."

47.     Upon information and belief, the Defendants' internal financial model never "forecast[] significant net positive cash flows" for Omagine "over the seven year period subsequent to the signing of the Development Agreement and a net present value of the Omagine Project of approximately $1.55 billion dollars."

48.     Upon information and belief, the Defendants never "*continually update[d] this model* at regular intervals as new facts and information become available [sic] as the development program and design process unfolds and as market conditions require."

49.     Upon information and belief, the Defendants never had "hotels, a boutique mall, an open air amphitheatre, exhibition venues, a harbor and marina area, offices, restaurants, and entertainment venues."

50.     Upon information and belief, the Defendants never "design[ed] and develop[ed] . . . unique tourism destinations" nor had a "high culture" flavor and a "pop culture" texture," and never "*generate[d] exceptional value for our shareholders*…."

51.     It is undisputed that OMAG's last (unaudited) financial filing with the SEC is a Form 10-Q for the quarter ending September 30, 2017. *See* Omagine, Inc. Form 10-Q for the period ending 09/30/17 attached, restated, and incorporated by reference hereto as **Exhibit D-1**.

52.     Furthermore, it is undisputed that the Defendants have failed to file its SEC periodic reports for over one (1) year, and is substantially in arrears on such filings as of the date hereof.

53.     It is undisputed the OMAG Form 10-Q shows that, as of September 30, 2017, the Company only had $516.00 in cash on hand and had no accounts receivable. *See id.* at p.5.

54.     As of September 30, 2017, its quarterly revenue was $0, and it had $0 is quarterly revenue for the three (3) months which had ended on September 30, 2016.  *See id.* at p.6.

55.     Moreover, the Defendants had $0 in revenue for the nine (9) months which ended on September 30, 2016 and September 30, 2017. *See id.* at p.6.

56.     As of September 30, 2017, the Company had a three (3) month Net Loss of $504,083.00, and a nine (9) months Net Loss of $1,472,026.00.  *Id.*

57.     The Defendants' Form 10-Q demonstrates that these Net Losses were similar to such losses as occurring during the comparable time periods in 2016.

58.      In short, it is undisputed that the Defendants falsely represented and omitted material facts in connection with the offer, purchase and sale of securities with Plaintiffs Auctus and EMA, while having a duty to disclose the same, and that such false and fraudulent information was relied upon by the Plaintiffs, to their detriment.

59.     As a direct and proximate cause of the violations of the federal securities laws of the Defendants, Auctus and EMA have suffered irreparable harm, and general, special,  and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment, and resulted in the unjust enrichment of the Defendants.

## V. <u>VIOLATIONS OF LAW</u>

### <u>COUNT I - VIOLATIONS OF FEDERAL SECURITIES LAWS</u>
#### (as to both Defendants OMAG and Journey,
#### and as to both Plaintiffs Auctus and EMA)

60.     The Plaintiffs reassert Paragraphs 1 through 59 of the Complaint, together with **<u>Exhibits</u>**, and restates and incorporates them herein by reference.

61.     The Defendants violated Section 12(2) of the Securities Act, 15 U.S.C §77l (2), in addition to Section 10(b) of the Exchange Act, 15 U.S.C. §78j(b) and Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5, in that, as described herein, and in connection with the purchase, offer and sale of securities, they knowingly, recklessly and intentionally:

a.   employed manipulative and deceptive devices and contrivances;

employed devices, schemes and artifices to defraud;

b.   made untrue statements of material fact and omitted to state material facts

necessary in order to make statements made, in light of the circumstances

under which they were made, misleading; and

c.   engaged in acts, practices and a course of business which operated as a fraud

or deceit upon the Plaintiffs.

62.   As a direct and proximate cause of the violations of the federal securities laws by

the Defendants, Plaintiffs Auctus and EMA have suffered irreparable harm, and general, special,

and consequential damages, including, but not limited to, loss of profits, interest, and other

damages, injuries, and losses, to their detriment, and resulted in the unjust enrichment of the

Defendants.

### COUNT II - VIOLATIONS OF
### <u>MASSACHUSETTS STATE SECURITIES LAWS</u>
**(as to both Defendants OMAG and Journey, and solely as to Plaintiff Auctus)**

63.   The Plaintiffs reassert Paragraphs 1 through 62 of the Complaint, together with

**<u>Exhibits</u>**, and restates and incorporates them herein by reference.

64.   The Defendants violated Massachusetts Uniform Securities Act, Massachusetts

General Laws Chapter 110A, §§ 101, *et seq.*, *as amended*, in that, as described herein, they offered

and sold securities by means of untrue statements of material fact and omitted to state material

facts necessary in order to make statements made, in light of the circumstances under which they

were made, not misleading.

65.   As a direct and proximate cause of the violations of the Massachusetts state

securities laws by the Defendants, Plaintiff Auctus has suffered irreparable harm, and general,

special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment, and resulted in the unjust enrichment of the Defendants.

### COUNT III – BREACHES OF CONTRACTS
**(as to Defendant OMAG as to only Plaintiff Auctus;
as to Defendants OMAG and Journey as to Plaintiff EMA)**

66.     The Plaintiffs reassert Paragraphs 1 through 65 of the Complaint, together with **Exhibits**, and restate and incorporate them herein by reference.

67.     Pursuant to the Auctus and EMA SPAs and the Notes, Plaintiffs Auctus and EMA invested in the Defendants and sought to become shareholders, in good faith, to join OMAG and Journey in the accomplishment of their business goals and in accordance with the standards of the business and the securities industry.

68.     Plaintiffs Auctus and EMA contend that the Defendants breached the respective contracts with the Plaintiffs by their conduct, as described herein.

69.     Plaintiff Auctus allege that the Company is liable to it for a breach of contract and for a breach of an implied covenant of good faith and fair dealing.

70.     Plaintiff EMA allege that OMAG and Journey are liable to it for a breach of contract and for a breach of an implied covenant of good faith and fair dealing.

71.     A breach of contract is failure without excuse to perform a duty which is due under the contract. Additionally, the interpretation of a contract is a question of law, not fact.

72.     If the wording is not ambiguous, then the contract must be enforced according to its plain terms.

73.     Plaintiff Auctus performed its obligations under the Auctus Purchase Agreement and the Auctus Note, and in good faith.

74.     Defendant Omagine, Inc., by its conduct described herein, violated the Auctus Purchase Agreement and the Note, breaching its contracts with Plaintiff Auctus.

75.     Plaintiff EMA performed its obligations under the EMA Purchase Agreement and the EMA Note, and in good faith.

76.     Defendants OMAG and Journey, by their conduct described herein, violated the EMA Purchase Agreement and the Note, breaching their contracts with Plaintiff EMA.

77.     As a direct and proximate cause of the Defendants' breaches of their contracts, the Plaintiffs have each suffered irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to their detriment, and resulted in the unjust enrichment of the Defendants.

**COUNT IV – BREACHES OF IMPLIED
COVENANT OF GOOD FAITH-FAIR DEALING**
**(as to Defendant OMAG as to only Plaintiff Auctus;
as to Defendants OMAG and Journey as to Plaintiff EMA)**

78.     The Plaintiffs reassert Paragraphs 1 through 77 of the Complaint, together with **Exhibits**, and restate and incorporate them herein by reference.

79.     It is well established that every contract carries an implied covenant of good faith and fair dealing whereby the parties treat each other fairly and act in good faith and no party to the contract shall take any action to harm another party's rights under the contract.

80.     The duty imposed by this "implied covenant of good faith and fair dealing" pertains to bad faith in the performance of a contract, not just in its execution or negotiation. Implicit in every contract is the requirement on faithfulness to an agreed upon common purpose and consistency with the justified expectations of the other party.

81.     A breach of contract is the failure to perform for which legal excuse is lacking. As a matter of law, a contract existed, which, as alleged herein, the Defendants breached and failed to

17

comply with the covenant of good faith and fair dealing.

82.     The law is clear - Plaintiffs Auctus and EMA had binding contracts and the Defendants had no legal basis, as a matter of law, to avoid their respective obligations under the Auctus Transaction Documents and/or under the EMA Transaction Documents, or the damages which arose as a result from the breach of the respective Auctus and EMA Purchase Agreements and Notes.

83.     The Defendants had a duty of good faith and fair dealing in their respective dealings with the Plaintiffs and pursuant to the promises, contracts, and statements made to the Plaintiffs to induce Auctus and EMA to enter into the contracts and provide assets to the Defendants in exchange for their promise to repay the same, with interest.

84.     Under the covenant, the Defendants were obligated to good faith performance of its obligations under the respective Transaction Documents with the Plaintiffs, and to be faithful and consistent to the justified expectations of the Plaintiffs.

85.     As described above, the Defendants, respectively, breached the implied covenant of good faith and fair dealing with the Plaintiffs.

86.     As a direct and proximate cause of the Defendants' breaches of the implied covenant of good faith and fair dealing, the Plaintiffs have suffered irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to their detriment, and resulted in the unjust enrichment of the Defendants.

### COUNT V – UNJUST ENRICHMENT
**(as to Defendant OMAG as to only Plaintiff Auctus;**
**as to Defendants OMAG and Journey as to Plaintiff EMA)**

87.     The Plaintiffs reassert Paragraphs 1 through 86 of the Complaint, together with the

**Exhibits**, and restate and incorporate them herein by reference.

88.     The Defendants, respectively, illegally received assets and benefits from the Plaintiffs, as arising from their false and fraudulent statements and misrepresentations, and without providing equivalent value therefor.

89.     The Defendants' actions, courses of conduct, and omissions were wantonly, intentionally, and maliciously conducted against each of the Plaintiffs, to their detriment.

90.     The Defendants have been unjustly enriched by their actions, as described herein.

91.     As a direct and proximate cause of the Defendants' unjust enrichment, the Plaintiffs have suffered irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to their detriment, and resulted in the unjust enrichment of the Defendants.

## COUNT VI – BREACHES OF FIDUCIARY DUTY
### (as to Defendant OMAG as to only Plaintiff Auctus;
### as to Defendants OMAG and Journey as to Plaintiff EMA)

92.     The Plaintiffs reassert Paragraphs 1 through 91 of the Complaint, together with the **Exhibits**, and restate and incorporate them herein by reference.

93.     A fiduciary relationship existed between each of the Plaintiffs and the Defendants, respectively, requiring them to act with a duty of the utmost loyalty and trust on behalf of both Auctus and EMA,

respectively.

94.     As fiduciaries, the Defendants were required to maintain and protect the welfare of each of the Plaintiffs, respectively.

95.     By engaging in the conduct described herein, the Defendants breached their fiduciary duties to the Plaintiffs.

96.     As a direct and proximate cause of the Defendants' breach of fiduciary duty, the Plaintiffs have suffered irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to their detriment, and resulted in the unjust enrichment of the Defendants.

**COUNT VII - FRAUD AND DECEIT**
**(as to both Defendants OMAG and Journey,**
**and as to both Plaintiffs Auctus and EMA)**

97.     The Plaintiffs reassert Paragraphs 1 through 96 of the Complaint, together with the **Exhibits**, and restate and incorporate them herein by reference.

98.     The actions of the Defendants described herein constitute fraud and deceit, including but not limited to the following:

a.      the Defendants made false representations of material facts, and/or omitted material facts with a duty of disclosure, knowing or having reason to know of their falsity;

b.      the Defendants made said misrepresentations and omissions for the purpose of inducing reliance from both Auctus and EMA; and

c.      Plaintiffs Auctus and EMA did rely upon said misrepresentations and omissions, to their detriment.

99.     As a direct and proximate cause of the Defendants' fraud and deceit, the Plaintiffs have suffered irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to their detriment, and resulted in the unjust enrichment of the Defendants.

### COUNT VIII - NEGLIGENT MISREPRESENTATION
**(as to both Defendants OMAG and Journey,**
**and as to both Plaintiffs Auctus and EMA)**

100.    The Plaintiffs reassert Paragraphs 1 through 99 of the Complaint, together with **Exhibits**, and restate and incorporate them herein by reference.

101.    The conduct of the Defendants as described herein constitutes negligent misrepresentation in that the Defendants negligently provided Auctus and EMA with erroneous and misleading information, and negligently omitted material information with a duty to disclose, to the Plaintiffs' respective detriment.

102.    As a direct and proximate cause of the Defendants' negligent misrepresentations, the Plaintiffs have suffered irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to their detriment, and resulted in the unjust enrichment of the Defendants.

### COUNT IX - VIOLATIONS OF MASSACHUSETTS
### CONSUMER PROTECTION ACT / M.G.L. C. 93A, §§ 2 & 11
**(as to both Defendants OMAG and Journey, and solely as to Plaintiff Auctus)**

103.    The Plaintiffs reassert Paragraphs 1 through 102 of the Complaint, together with the **Exhibits**, and restate and incorporate them herein by reference.

104.    At all relevant times herein, Defendants OMAG and Journey conducted a trade or business, as defined by the Massachusetts Consumer Protection Act, M.G.L. c. 93A, within the Commonwealth of Massachusetts.

105.    The conduct of the Defendants as described herein, constitutes unfair and deceptive trade practices, under Sections 2 and 11 of the Consumer Protection Act, including but not limited to claims that the Defendant:

> a.    executed the Auctus Securities Purchase Agreement and the Auctus Note

with full knowledge and understanding of the Defendants' obligations to Plaintiff Auctus;

b.    fraudulently induced Auctus to invest in the Company and thereby breached the promise to repay the Plaintiff;

c.    fraudulently misrepresented and concealed from Plaintiff Auctus the full and complete financial and operational details and prospects of the Company in inducing the Plaintiff to make its investment in the Company;

d.    knowingly and intentionally concealed these activities from Auctus, to its detriment; and/or

e.    violated the requirements, terms and conditions of existing statutes, rules and regulations meant for the protection of the public's health, safety or welfare.

106.    As a direct and proximate cause of the Defendants' violations of the Massachusetts Consumer Protection Act, M.G.L. c. 93A, Sections 2 and 11, Plaintiff Auctus has suffered irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment, and resulted in the unjust enrichment of the Defendants.

# VI. <u>REQUESTS FOR RELIEF</u>

WHEREFORE, the Plaintiffs, Auctus Fund, LLC and EMA Financial, LLC, respectfully request that this Honorable Court grant them each the following relief:

A)      Order, grant and enter temporary, preliminary and permanent injunctive and equitable relief, and specific performance, and finding that the Plaintiffs have suffered irreparable harm, have a likelihood of success on the merits, that the balance of hardships favors the Plaintiffs and that it is in the public interest to grant such temporary, preliminary and permanent injunctive and equitable relief, and specific performance for the benefit of the Plaintiffs, as set forth herein;

B)      Determine that the Defendants are liable for all damages, losses, and costs, as alleged herein;

C)      Determine and award the Plaintiffs, Auctus Fund, LLC and EMA Financial, LLC, the actual losses sustained by them as a result of the violations of law by the Defendants, as set forth herein;

D)      Render a judgment and decision on behalf of the Plaintiffs, Auctus Fund, LLC and EMA Financial, LLC, on all Counts of the Complaint, and issue findings of fact and rulings of law, as necessary and appropriate, that the Defendants are liable, in all respects;

E)      Order, decide, adjudge, and determine that the liability of the Defendants, is for all losses, injuries, and damages, special, consequential, general, punitive, and/or otherwise, and for all interest and costs, as alleged herein;

F)      Award the Plaintiffs, Auctus Fund, LLC and EMA Financial, LLC, their respective costs, including, but not limited to, filing fees, costs, expenses and interest, for

being required to prosecute this action;

G)      Award the Plaintiffs, Auctus Fund, LLC and EMA Financial, LLC, their respective

actual attorneys' fees, for being required to prosecute this action;

H)      Award the Plaintiffs, Auctus Fund, LLC and EMA Financial, LLC, multiple,

double, treble, and/or punitive damages in an amount to be determined;

I)      Enter judgment on behalf of the Plaintiffs, Auctus Fund, LLC and EMA Financial,

LLC, on the Complaint;

J)      Order declaratory relief, as appropriate and as this Honorable Court deems

necessary; and/or

K)      Any additional relief, which this Honorable Court deems just and proper.


**THE PLAINTIFFS, AUCTUS FUND LLC AND EMA FINANCIAL, LLC,**
**<u>DEMAND A TRIAL BY JURY ON ALL COUNTS SO TRIABLE</u>**


Respectfully Submitted,
PLAINTIFFS, Auctus Fund LLC, and
  EMA Financial, LLC

By their Attorneys,



     /s/  *Philip M. Giordano*
Philip M. Giordano, Esq. (BBO No. 193530)
Giordano & Company, P.C.
REED & GIORDANO, P.A.
47 Winter Street, Suite 800
Boston, Massachusetts 02108-4774
Telephone: (617) 723-7755
Facsimile: (617) 723-7756
Email: pgiordano@reedgiordano.com

Dated: April 11, 2019